IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

2007 AUG -8 PM 3: 26

TOM LAWLER, CLERK

| | |
|---|---|
| ALICE TRAMMELL, as Executrix of the ESTATE OF MARY ROBERTS,<br><br>Plaintiff,<br><br>vs.<br><br>ADVANTAGE HEALTH SYSTEMS, INC., and PARKWOOD LIVING CENTER, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION FILE

NO. 07C - 11353 - 2

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, ALICE TRAMMELL, as Executrix of the Estate of MARY ROBERTS, and files this her Complaint for Damages against the Defendants ADVANTAGE HEALTH SYSTEMS, INC., and PARKWOOD LIVING CENTER, LLC, and alleges as follows:

### Preliminary, Venue, and Jurisdiction Allegations

1.    Plaintiff, ALICE TRAMMELL, is the duly appointed Executrix of the Estate of MARY ROBERTS, having been so appointed on July 24, 2007 in the Probate Court of Gwinnett County, Georgia and Plaintiff brings Counts I, II, and III of this action in that capacity. MARY ROBERTS died on June 11, 2007. MARY ROBERTS died a widow. She had no children who survived her.

2.    Defendant, ADVANTAGE HEALTH SYSTEMS, INC., is a South Carolina corporation, authorized to do business in the State of Georgia, was actively engaged and transacting business in Gwinnett County, Georgia, was doing business as the nursing home

facility known as the PARKWOOD LIVING CENTER, a facility operating at 3000 Lenora Church Road, Snellville, Gwinnett County Georgia 30078, where this Defendant also maintained an office, and where the cause of action which is the subject of this Complaint originated. Defendant ADVANTAGE HEALTH SYSTEMS, INC. may be served by serving its registered agent for service, to-wit: Paul J. Mitchell, 1021 15th Street STE 1, Augusta, Richmond County, GA, 30901, by second original service.

3.     Defendant, PARKWOOD LIVING CENTER, is a South Carolina corporation, authorized to do business in the State of Georgia, was actively engaged and transacting business in Gwinnett County, Georgia, was doing business as the nursing home facility known as the PARKWOOD LIVING CENTER, LLC, a facility operating at 3000 Lenora Church Road, Snellville, Gwinnett County Georgia 30078, where this Defendant also maintained an office, and where the cause of action which is the subject of this Complaint originated. Defendant PARKWOOD LIVING CENTER, LLC may be served by serving its registered agent for service, to-wit: CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, Fulton County, Georgia 30361, by second original service.

4.     Upon information and belief, at all times material hereto, Defendants were engaged in the business of owning, operating, and/or managing the nursing home facility known as PARKWOOD LIVING CENTER LLC, and were responsible to the residents of the facility, including MARY ROBERTS, for the provision of their custodial care and treatment, and the provision of nursing home services, including, but not limited to, the provisions of resident rights.

5.     Defendants are subject to the venue and jurisdiction of this Honorable Court, and, for purposes of this action, are considered to be joint tortfeasors.

2

6.     The duties Defendants owed to MARY ROBERTS while she was a resident at their facility included, the duty to provide her with that degree of care, skill and diligence usually exhibited by nursing homes generally in the community, and the duties set forth in *Bill of Rights for Residents of Long-Term Care Facilities* as set forth in O.C.G.A. § 31-8-104 through 31 8-121.

7.     Pursuant to O.C.G.A. § 9-11-9.1(a), to the extent that statute may even apply to this action, attached hereto and incorporated herein as Exhibit "A", is the Affidavit of Natalie Baker who is qualified as an expert witness on the issues raised in this Complaint. The Affidavit specifies at least one negligent act or omission on the part of the Defendants, and the factual basis for such negligent act or omission that caused injury to MARY ROBERTS. The Affidavit is not inclusive of each act, error, or omission that has been committed, or may have been committed by the Defendants, and Plaintiff reserves the right to contend and prove additional acts, errors, and omissions on the part of Defendants that reflect a departure from the requisite standard of care required by law.

8.     All conditions precedent to bringing this action have occurred or been performed, including the attachment of an authorization as called for in O C.G.A. § 9-11-9.2, attached as Exhibit "B". Please note, the Supreme Court of Georgia, on May 14, 2007, in the case of Allen, et al. v. Wright, S0662018, struck down this authorization as not in compliance with applicable law. Therefore, Defendants are not at liberty to use this authorization in any manner inconsistent with the Court's holding.

### Background

9.     MARY ROBERTS was first admitted to PARKWOOD LIVING CENTER, as a resident and patient on December 19, 2002, at the age of approximately eighty (80) years. She

3

remained a resident there until September 2, 2005.

10.    The duties Defendants owed to MARY ROBERTS, include services provided with the skills and diligence usually exhibited by nursing staff under similar conditions and like surrounding circumstances. This duty included: the responsibility to insure that the nursing staff was properly hired, properly trained, and properly retained; to conduct a proper fall assessment; to provide watchful oversight and protective care of MARY ROBERTS while she was in their care; to implement a care plan to meet the needs of MARY ROBERTS; to insure that the facility was adequately staffed to meet the needs of residents and patients such as MARY ROBERTS; to notify MARY ROBERTS' physicians and family of any changes in her condition; to provide adequate nursing assessments; to protect MARY ROBERTS from injury; and to insure MARY ROBERTS' statutorily protected residents' rights were provided.

11.    The duties Defendants owed to MARY ROBERTS while she was a resident at their facility included the duty to provide her with that degree of care, skill and diligence usually exhibited by nursing homes generally in the community, and the duties set forth in *Bill of Rights for Residents of Long-Term Care Facilities* as set forth in O.C.G.A. § 31-8-104 through 31-8-121.

12.    Defendants also had vicarious liability for the negligent acts and omissions of all persons or entities under their control, either directly or indirectly, including their respective employees, agents, and consultants, and are therefore liable for the acts of negligence committed by them in the scope of their employment.

13.    In order to properly care for MARY ROBERTS, Defendants, by and through their nursing staff, were required by the standard of care to: conduct an assessment for risk of injuries and to institute an acceptable program to reduce MARY ROBERTS' risk for injuries: keep

4

MARY ROBERTS' family and medical physician informed of her condition; prevent injuries with and without known causes; and maintain an accurate medical record reflecting the care and services provided to MARY ROBERTS as well as changes in condition.  The standard of care required Defendants, by and through their nursing staff, to provide these services in a reasonably prudent manner, and by their acceptance of MARY ROBERTS as a patient and resident, Defendants, by and through their nursing staff, agreed to do so.

14.     While in the sole custody and control of, and under the sole custodial care of Defendants, MARY ROBERTS suffered various unexplained injuries, including, but not limited to, on or about August 14, 2005. Upon information and belief, these injuries and conditions were caused by the conduct of the Defendants, which is complained of herein.  MARY ROBERTS endured these injuries and conditions which were caused by the conduct of the Defendants, which is complained of herein.

15.     The injuries and conditions referenced in the above paragraph required extensive medical care and treatment, and were painful and disfiguring to MARY ROBERTS.

## COUNT I
### Statutory Cause of Action
### Brought Pursuant to the Provisions of the
### Bill of Rights for Residents of Long-term Care Facilities
### against Defendants ADVANTAGE HEALTH SYSTEMS, INC.
### and PARKWOOD LIVING CENTER, LLC

16.     Plaintiff, ALICE TRAMMELL, as Executrix of the Estate of MARY ROBERTS, reallege and incorporate by reference Paragraphs 1 through 15 above as if each were fully set forth herein.

17.     By virtue of the provisions of O.C.G.A. § 9-2-41, MARY ROBERTS' actions and causes of action for the recovery of damages for injuries to her person prior to her death do not abate by her subsequent death, but survive to the Executrix of the Estate of MARY ROBERTS.

18.     At all times material hereto, PARKWOOD LIVING CENTER was a "facility," as

5

defined by the provisions of O.C.G.A. 31-8-102 (3), being operated by the Defendants, and was subject to the regulation of, and licensure by, the Georgia Department of Human Resources.

19.     At all times material hereto, MARY ROBERTS was a "resident" of PARKWOOD LIVING CENTER as defined by the provisions of O.C.G.A. 31-8-102 (5).

20.     By virtue of the provisions of O.C.G.A. §§ 31-8-104 through 31-8-121, MARY ROBERTS was entitled to have certain rights provided for and protected while she was a resident at PARKWOOD LIVING CENTER, LLC. Those resident's rights included, but were not limited to, the following:

§31-8-108

(a)     Each resident shall receive care, treatment, and services which are adequate and appropriate. Care, treatment, and services shall be provided as follows:

    (1)     With reasonable care and skill;
    (2)     In compliance with applicable laws and regulations;
    (3)     Without discrimination in the quality of a service based on a source of payment for the service;
    (4)     With respect for the resident's personal dignity and privacy;

(b)     In the provision of care, treatment, and services to the resident by the facility, each resident or guardian shall be entitled to the following:

    (1)     To choose the resident's physician.
    (2)     To participate in the overall planning of the resident's care and treatment. The resident or guardian shall be informed of this right each time a substantial change in the treatment is made;
    ***
    (5)     To have any significant change in the resident's health status reported to persons of his choice by the facility within a reasonable time;

§31-8-114

    (4)     The right to have unimpeded private ... communications with anyone of the resident's choice, by ... visitation...
    ***
    (6)     ...the right to respect and privacy in his medical,

6

personal, and bodily care program.

§31-8-120

(e)     Visitors must be granted access to residents ...

21.     MARY ROBERTS was aggrieved because the Defendants violated or failed to provide for her resident rights while she was resident at PARKWOOD LIVING CENTER

22.     By virtue of the provisions of O.C.G.A. 31-8-126(a), Plaintiff has a separate cause of action against Defendants for each of those injuries and damages, which arose from the violations of, and failures to provide for MARY ROBERTS' statutorily protected nursing home resident rights.

23.     Defendants' responsibilities to MARY ROBERTS as outlined above were non-delegable and Defendants have direct liability for violations of, and failures to provide for deprivations and infringements of said rights by any person or entity under Defendants' control, direct or indirect, including their employees, such as nursing staff, agents, consultants and independent contractors, whether in-house or outside entities, individuals, agencies or pools, or caused by Defendants' policies, whether written or unwritten, or common practices.

24.     Notwithstanding the responsibility of Defendants to provide MARY ROBERTS with her statutorily mandated and protected nursing home resident rights as set forth herein, MARY ROBERTS was deprived of such rights by the acts or omissions of Defendants, such acts and omissions which include, but are not limited to, the following:

(a)   · Failed to timely notify the physician and family of changes in condition;

(b)     Failed to prevent injuries and unexplained injuries;

(c)     Failed to maintain an accurate medical record reflecting the care and services provided to MARY ROBERTS as well as changes in condition;

(d)     .Failed to provide sufficient staff to meet MARY ROBERTS' needs;

(e)     Failed to provide adequate nursing care;

7

(f)     Failed to provide a safe environment;

(g)     Failed to follow physician's orders;

(h)     Failed to provide proper care and services in accordance with resident's rights;

(i)     Failed to provide watchful oversight and protective care of MARY ROBERTS;

(j)     Failed to provide adequate nursing services;

(k)     Failed to obtain necessary medical services in a timely manner;

(l)     Failed to properly supervise staff;

(m)    Failed to properly train staff;

(n)     Failed to properly perform staff retention;

(o)     Failed to protect the privacy and dignity of MARY ROBERTS; and

(p)     Failed to provide proper care and services in accordance with the resident's needs.

25.     In addition to Defendants' direct responsibility under O.C.G.A. §§ 31-8-104 through 31-8-121 as described above, Defendants had vicarious liability for the acts and omissions of all persons or entities under their control either direct or indirect, including their employees, such as (but not limited to), nursing staff, agents, and consultants, for violations of, and failures to provide for MARY ROBERTS' resident's rights.

26.     The duty alleged in the immediately preceding paragraphs include, but is not limited to, proper training and supervision; proper hiring, background and referral checks; and proper retaining and dismissing of employees, agents, consultants and independent contractors.

Damages

27.     As a direct and proximate result of the violations of, and the failures to provide for MARY ROBERTS' resident rights by Defendants, as described herein, MARY ROBERTS

8

had been aggrieved and suffered injuries, physical and mental pain and suffering, disability, physical impairment, disfigurement, inconvenience, and loss of capacity for enjoyment of life. Further, she incurred medical expenses related to her rights being violated.

28.    Plaintiff, ALICE TRAMMELL, as Executrix of the Estate of MARY ROBERTS, bring this action to recover damages for the mental, physical and emotional pain and suffering of MARY ROBERTS prior to her death, to recover damages for her death, and also to recover those medical expenses that resulted from the deprivations and infringements upon MARY ROBERTS' resident rights by the Defendants, all of which such damages resulted from the violations of, and the failures, to provide for, MARY ROBERTS' resident rights by the Defendants.

WHEREFORE, Plaintiff, ALICE TRAMMELL, as Executrix of the Estate of MARY ROBERTS, demand trial by jury and judgment against Defendants, for compensatory damages in an amount to be determined by a jury, and such costs and attorney's fees as may be appropriate under Georgia law.

## COUNT II
### Survival Negligence Claims against Defendants
### ADVANTAGE HEALTH SYSTEMS, INC.
### and PARKWOOD LIVING CENTER LLC

29.    Plaintiff, ALICE TRAMMELL, as Executrix of the Estate of MARY ROBERTS, realleges and incorporates by reference Paragraphs 1 through 15 above as if they were fully set forth herein.

30.    By virtue of the provisions of O.C.G.A. § 9-2-41, MARY ROBERTS' actions and causes of action for the recovery of damages for injuries to her person prior to her death does not abate by her subsequent death, and survive to the Executrix of the Estate of MARY ROBERTS.

31.    By its acceptance of MARY ROBERTS as a resident at its nursing home facility, Defendants owed her a duty to furnish her with that degree of care, skill and diligence required of the nursing home profession, and nursing care in general under similar conditions and like surrounding circumstances.

9

32.   ·  Defendants were negligent and failed to exercise that degree of care required of the long-term care and skilled nursing home profession, and nursing care in general under similar conditions and like circumstances. To the extent that this Count may be considered a medical malpractice action as defined in O.C.G.A. § 9-11-8 or O.C.G.A. § 9-3-70, see the Affidavit of Natalie Baker, attached as Exhibit "A" hereto pursuant to O.C.G.A. § 9-11-9.1, to the extent that this stature may apply, if at all, to this action, and which Affidavit is hereby incorporated herein by reference. The Affidavit specifies at least one negligent act or omission on the part of Defendants and/or their nursing staff, and the factual basis for such negligent act or omission. The Affidavit is not inclusive of each act, error, or omission that has been committed by the Defendants, and Plaintiff reserves the right to contend and prove additional acts, errors, and omissions on the part of Defendants that reflect a departure from the requisite standard of care required by law.

· 32.      Notwithstanding the duty owed to MARY ROBERTS by Defendants as described above, the Defendants were negligent and failed to exercise that degree of care, skill and diligence required of under similar conditions and like circumstances  The negligence of Defendants included, but was not limited to, the following:

        (a)      Failed to timely notify the physician and family of changes in condition;

        (b)      Failed to prevent injuries and unexplained injuries;

        (c)      Failed to maintain an accurate medical record reflecting the care and services provided to MARY ROBERTS as well as changes in condition;

        (d)      Failed to provide sufficient staff to meet MARY ROBERTS' needs;

        (e)      Failed to provide adequate nursing care;

        (f)      Failed to provide a safe environment;

        (g)      Failed to follow physician's orders;

        (h)      Failed to maintain accurate and complete medical records;

        (i)      Failed to maintain clinical records in accordance with accepted

professional standards;

(j) Failed to notify the physician of changes in condition;

(k) Failed to properly supervise staff;

(l) Failed to properly train staff;

(m) Failed to properly perform staff retention;

(n) Failed to protect the privacy and dignity of MARY ROBERTS; and

(o) Failed to provide proper care and services in accordance with the resident's needs.

33. Defendants also have vicarious liability for the negligent acts and omissions of all persons or entities under their control either direct or indirect, including their respective employees, such as (but not limited to), nursing staff, and other agents and consultants.

34. The duty alleged in the immediately preceding paragraphs include, but is not limited to, proper training and supervision; proper hiring, background and referral checks; and proper retaining and dismissing of employees, such as (but not limited to), nursing staff, agents, consultants, and independent contractors.

### Damages

35. As a direct and proximate result of the negligence of Defendants as described herein, MARY ROBERTS suffered injuries, physical and mental pain and suffering, disability, physical impairment, disfigurement, inconvenience, and loss of capacity for enjoyment of life. Further, she incurred medical expenses related to her injuries.

36. Plaintiff, ALICE TRAMMELL, as Executrix of the Estate of MARY ROBERTS, bring this action to recover damages for the mental, physical, and emotional pain and suffering to MARY ROBERTS that resulted from the negligence of Defendants complained of herein, and to recover from the Defendants those medical expenses that resulted from the negligence of Defendants.

11

WHEREFORE, Plaintiff, ALICE TRAMMELL, as Executrix of the Estate of MARY ROBERTS, demands trial by jury and judgment against Defendants, and compensatory damages in an amount to be determined by a jury, and such costs and attorney's fees as may be appropriate under Georgia law. To the extent that this Count may be considered a malpractice action as defined in O.C.G.A. § 9-11-8 or O.C G.A. § 9-3-70, then Plaintiff demands trial by jury and judgment against the Defendants and, for compensatory and punitive damages in an amount to be determined by a jury in excess of Ten Thousand ($10,000.00) Dollars, and such costs and attorney fees as may be appropriate under Georgia law.

## COUNT III
### Wrongful Death Claim Against Defendants

37.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 15, and Paragraphs 29 through 34, above as if they were fully set forth herein.

38.     Plaintiff shows that upon information and belief, the wrongful acts of the Defendants, as set out hereunder, have caused or contributed to the death of MARY ROBERTS, who died on June 11, 2007, leaving no surviving spouse, and no surviving children.

### Damages

39.     As a direct and proximate cause of the negligence of the Defendants as described herein, MARY ROBERTS died on June 11, 2007.

40.     Plaintiff, ALICE TRAMMELL, brings this action in her representative capacity on behalf of those qualified to recover damages from Defendants for the full value of the life of MARY ROBERTS, as set forth in O.C.G.A. § 51-4-2.

WHEREFORE, Plaintiff, ALICE TRAMMELL, demands trial by jury and judgment against Defendants for damages for the full value of the life of MARY ROBERTS in an amount to be determined by a jury, and such costs and attorney's fees as may be appropriate under Georgia law.

12

## JURY DEMAND

Pursuant to O.C.G.A. §15-12-122 (a)(2), Plaintiffs demand a full jury panel of 12 to try this case.

LAW OFFICES OF DANIEL W. COTTER, P.C.

Daniel W. Cotter
Georgia Bar Number 189599
The Manning Leipold Building
910 Church Street, Suite 100
Decatur, GA 30030
(404) 377-5775

AND

BROOKS, LEBOEUF, BENNETT
FOSTER & GWARTNEY, P.A.

Scott E. Gwartney   by DWC
Scott E. Gwartney
Georgia Bar Number 315955
909 East Park Avenue
Tallahassee, FL 32301
(850) 222-2000

STATE OF ALABAMA

COUNTY OF MADISON

07C- 1 1 3 5 3   2

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

2007 AUG -8  PH 3:28

TOM LAWLER, CLERK

## AFFIDAVIT OF NATALIE BAKER, MSN, CRNP

COMES NOW before me, an officer authorized to administer oaths, NATALIE BAKER, MSN, CRNP, who having been duly sworn, deposes and says:

1.

My name is Natalie Baker, and my address is 108 Windy Way, Madison, Alabama, 35758.

2.

I earned a Bachelor of Science in Nursing degree in 1985 and have been practicing nursing since that date  I earned a Master's Degree in Nursing in 1990. I am dually certified as an Adult Health and Geriatric Nurse Practitioner. I am a Registered Nurse licensed and in good standing in the States of Georgia, Alabama, Tennessee, and Arkansas. I attach as Exhibit "A" to this affidavit an accurate and true copy of my curriculum vitae giving further information as to my training and experience.

3.

From my background, training and experience in the Long Term Care field I know the standards of care applicable to Long Term Care facilities and skilled nursing facilities. I have practiced as a Nurse Practitioner in the Long Term Care setting since 1990 and have also worked as a RN in the Long Term Care setting. As a Nurse Practitioner, I have evaluated and written orders for numerous nursing home residents. As a R.N. supervisor, I have been responsible for managing the nursing home staff and ultimately responsible for the needs of the nursing home

EXHIBIT A

AFFIDAVIT OF NATALIE BAKER, MSN, CRNP - Page 1

residents. Because of my nursing background and training, my knowledge of the rules and regulations which govern Long Term Care facilities throughout the United States, and the State of Georgia, including those counties in the Atlanta metro area, I know the standards of care required in a Long Term Care setting   I am specifically knowledgeable of the applicable standards of care required for the care and treatment of Mary Roberts by Parkwood Nursing & Rehab Center during her residency, based upon the qualifications as set forth above.  Parkwood Nursing & Rehab Center is a skilled nursing facility and the breaches of care I identify in this affidavit arise from the standards of care I know as a result of my education, training, background, and experience as set forth above.

4.

I make this affidavit in support of an action to be filed on behalf of Mary Roberts, alleging, among other things, negligence in the care and treatment of Mary Roberts.  My opinions contained in this affidavit are expressed as an expert engaged in the field of providing care to residents in the Long Term Care environment and facilities such as care provided by Parkwood Nursing & Rehab Center.  To date, I have reviewed the following materials related to Mary Roberts:

- Various medical records from Parkwood Nursing & Rehab Center; and
- Various medical records from Gwinnet Hospital (limited records found within the nursing home chart)

5.

Based on review of the records described above, it would appear that Mary Roberts' applicable medical history is as follows: Mary Roberts was an 80 year old female who had a previous history that included transient ischemic accident (TIA), urinary tract infections, bipolar

disorder, memory loss, osteoporosis, and hypertension. Ms. Roberts was first admitted as a resident at the Parkwood Nursing & Rehab Center on December 19, 2002, and remained a resident at the facility until she was transferred on September 2, 2005 to Eastside Medical Center for possible admission to their Heritage Center (psychiatric department).

6.

It is my opinion, which I express within a reasonable degree of nursing certainty, that the care and treatment provided to Mary Roberts, and the record keeping related thereto, fell below the applicable standard of care for Long Term Care facilities generally, and specifically Parkwood Nursing & Rehab Center. Such conduct by the nursing home violates the federal and state regulations applicable to the nursing facility which help establish the standards of care, in particular those set forth in 42 CFR § 483.0 *et seq*. Specifically, the Defendants and nursing staff employed by the Defendants violated the standards of care applicable to them and federal regulations applicable to the facility by failing to provide and/or safeguard documentation regarding Ms. Roberts' condition, as required by 42 CFR §483 20, and failing to maintain complete, accessible, organized clinical records that contain sufficient information to identify the resident and her assessments and the services provided, as in accordance with accepted and professional practices, as required by 42 CFR §483.75. This affidavit is not intended to state every opinion that I might have formulated.

7.

In order to properly care for Mary Roberts, Parkwood Nursing & Rehab Center was required by the applicable standard of care to fully maintain proper and timely medical documentation of her condition; communicate with her family in order to provide continuity of care; to maintain careful supervision of Mary Roberts in order to monitor her condition; to

accurately assess and treat conditions once they occurred, and to maintain and safeguard clinical record information on each resident in accordance with accepted professional standards and practices and as required by the Federal Regulations referenced above. The standard of care required Parkwood Nursing & Rehab Center to provide these services in a reasonably prudent manner, and by their acceptance of Mary Roberts as a resident, Parkwood Nursing & Rehab Center agreed to do so.

8.

Based on my review of the records listed above, and based further upon my background, training, experience, and knowledge in the field, it is my opinion that Parkwood Nursing & Rehab Center, and/or any other legal entity owning, operating, or managing this facility during Mary Roberts' residency, was negligent and failed to exercise the degree of care, skill and diligence generally exercised by nursing homes, under the same or similar circumstances in its care and treatment of Mary Roberts. Use of the term "Parkwood Nursing & Rehab Center" is intended to refer interchangeably to any legal entity owning, operating, or managing this facility during the period of Mary Roberts' residency there. The negligence and departures from the standards of care required of Parkwood Nursing & Rehab Center specifically included, but were not limited to, the following specific acts or omissions:

(A)    *The Failure of Parkwood Nursing & Rehab Center to Maintain and Safeguard a Complete and Accurate Medical Record Regarding Mary Roberts.* The standard of care required that Parkwood Nursing & Rehab Center maintain a complete and accurate medical record regarding its residents. Parkwood Nursing & Rehab Center breached the standard of care by failing to maintain and safeguard a complete and accurate medical record regarding Mary Roberts. This failure is evidenced by the failure to document an incident that occurred on or

around August 14, 2005. A nursing note written at 5:00am on August 14, 2005, documented a purple area 10 inches X 3 inches on the back of Ms. Roberts' right upper leg. Later that day, at 1:00pm, Alice Trammell, (daughter in law of Ms. Roberts) was notified regarding the bruised area and Ms. Trammell reported that Ms. Roberts had told another family member that she had fallen out of bed the prior night. Dr. Dronavalli was notified and he ordered a hip X-Ray and Ultram for pain. The nursing staff questioned Ms. Roberts regarding the bruised area at 2:30 pm on August 14, 2005, and according to the nursing note "she said she doesn't remember falling out of bed, patient not able to remember what happened". On August 17, 2005, the psychiatrist documented that she had a recent fall and the August 23, 2005 MDS documented a fall within the past 30 days. However, Parkwood Nursing & Rehab Center did not care plan this fall or assess for the risk of additional falls. Furthermore, the events surrounding this incident were not documented. All of the records described above are critical to the adequate and appropriate provision of the care and services that Mary Roberts required, so as to allow her care providers to administer a continuity of adequate and appropriate care to meet the unique needs of Ms. Roberts. This information must be accurately recorded, organized in a readily accessible fashion, and safeguarded by the nursing home facility in accordance with the standards of care required in the long term care industry, and as required by the Federal Regulations described above and yet Parkwood Nursing & Rehab Center failed to record and safeguard the same.

(B)     *The Failure of Parkwood Nursing & Rehab Center to Monitor a Significant Condition On Ms. Mary Roberts' Right Upper Leg As Ordered by Medical Staff.* Parkwood Nursing & Rehab Center was required by the standards of care to accurately assess, intervene, and record any significant changes in Ms. Roberts' condition. The initial hip X-Ray obtained on August 14, 2005 showed a possible slightly incomplete subcapital fracture to her right upper leg

Dr. Dronavalli was paged on August 14, 2005 at 10:00pm but he did not return the phone call. The staff waited until 12:45 pm on August 15, 2005 before again attempting to notify Dr. Dronavalli. At that time, Dr. Dronavalli ordered another hip X-Ray but the staff did not inform the doctor that Ms. Roberts' right leg rotated outwards (classic sign of hip fracture). On August 16, 2005 at 1:00pm, Dr. Dronavalli and Alice Trammell were notified by the nursing staff that the repeat X-Ray did not show any fractures or dislocation of the right hip or femur. Ms. Roberts' physical and mental condition continued to deteriorate and physical therapy documented the new onset of her inability to stand. On August 27, 2005, physical therapy documented that she was able to extend both of her knees but that she preferred to curl her legs when in bed. On September 1, 2005 at 4:00pm, Ms. Roberts was unable to straighten her right leg. Despite these obvious signs of a possible hip fracture, Dr. Dronavalli was not notified. On September 2, 2005, Ms. Roberts was transferred to Eastside Medical Center for a possible psychiatric admission due to possible depression (including statements that she wanted to die).

9.

It is my opinion that the departures from the standards of care by Parkwood Nursing & Rehab Center as described above were the direct and proximate cause of harm and/or injury to Mary Roberts.

10.

All of the opinions stated in this affidavit are expressed within a reasonable degree of nursing probability, and are based upon my education, background and experience, upon my review of the records listed herein, and upon my knowledge of the standards of care applicable to skilled nursing homes and Long-Term Care facilities, such standards being applicable to facilities throughout the country.

11.

This affidavit is by no means to be construed as an exhaustive recitation of all my

opinions with regard to the care and treatment that Mary Roberts received while she was a

resident at Parkwood Nursing & Rehab.  Moreover, I reserve the right to supplement,

amend, or change these opinions should additional information be brought to my attention.

FURTHER AFFIANT SAYETH NOT.

_Natalie Baker_
NATALIE BAKER, MSN, CRNP

BEFORE ME, the undersigned authority, personally appeared NATALIE BAKER, who is personally known to me or who produced _Alabama DL_____ as identification, and who did take an oath, and deposes and says that the foregoing is true and correct in all respects.

SWORN TO AND SUBSCRIBED before me, this _2nd_ day of August, 2007.

_Sarah Becker_
Notary Public
My commission expires: _____

My Commission Expires 12-13-2010

# NATALIE R. BAKER, MSN, CRNP

## Curriculum Vitae

### PERSONAL INFORMATION:

Home Address:    108 Windy Way
Madison, AL 35758

Business Address:   Natalie Baker, LLC
108 Windy Way
Madison, AL 35758
(256) 217-1772
nbakerrn@knology.net

Tax ID Number:   20-2940248

Date of Birth:   February 6, 1963

### EDUCATIONAL BACKGROUND:

| | | |
|---|---|---|
| 1988-1990 | Master of Science in Nursing<br>June, 1990 | University of Alabama (Bham)<br>School of Nursing<br>Birmingham, AL |
| 1981-1985 | Bachelor of Science in Nursing<br>June, 1985 | University of Alabama (Bham)<br>School of Nursing<br>Birmingham, AL |

### CERTIFICATION:

Adult Nurse Practitioner and Gerontological Nurse Practitioner (Dual Certification)

### PROFESSIONAL APPOINTMENT:

Nursing Board Consultant for TN Health Related Boards Investigations Committee

1

## NURSING LICENSURE:

| | | | |
|---|---|---|---|
| 1985-present | RN/CRNP (Alabama) | License No. 1-04930 | Exp. 12/31/08 |
| 1990-present | CRNP (Adult Health) | License No. 147392-21 | Exp. 12/31/10 |
| 1992-persent | CRNP (Gerontology) | License No. 0190343-23 | Exp. 11/30/07 |
| 1999-present | RN (Tennessee) | License No. 125901 | Exp. 02/28/09 |
| 2001-present | RN (Arkansas) | License No. R66549 | Exp. 02/28/09 |
| 2001-present | RN (Georgia) | License No. RN154672 | Exp. 01/31/08 |

## PROFESSIONAL EXPERIENCE:

2005-
Present
Nurse Practitioner
Dr. Dawn Mancuso
Athens, AL
- Provide primary care services to nursing home patients.

2005-
2007
Registered Nurse Consultant
Wyndham Park Assisted Living Facility
Huntsville, AL
- RN Consultant for Dementia Speciality Care units.

2005-
2006
Registered Nurse
Parkview Healthcare Center
Huntsville, AL
- PRN position providing various RN duties at skilled nursing home.

2000-
2004
Geriatric Nurse Practitioner
Dr. Robert Burns
Memphis, TN
- Provided primary care services to nursing home patients.

1999-
2001
Part Time Faculty
University of Memphis
School of Nursing
Memphis, TN
- Various teaching responsibilities for baccalaureate nursing
  students.

1999-
2000
Nurse Practitioner
Patient Support Solutions, Inc.
Memphis, TN
- Provided wound care treatments, including assessments,
  evaluations and debridements, to patients in various nursing homes,
  and home settings.

06/13/07

| | |
|---|---|
| 1998-<br>Present | Legal Nurse Consultant<br>Huntsville, AL/Memphis, TN |

- Review medical records related to standards of nursing care.

| | |
|---|---|
| 1997-<br>1999 | Nurse Practitioner<br>UAB/Kirklin Clinic<br>Department of Geriatrics/Center for Aging<br>Birmingham, AL |

- Provided primary care, including wound care, to geriatric patients and coordinated care with nursing homes and home health agencies
- Performed examinations for urinary incontinent patients, followed National Institutes of Health and National Institute on Aging research protocols for evaluation of the effectiveness of pelvic muscle exercises.
- Assisted with various research tasks including manuscript preparation.
- Provided clinical oversight to medical residents, medical students, and nursing students.
- Implemented home continence program for homebound patients receiving home care through the local Visiting Nursing Association.

| | |
|---|---|
| 1996-<br>1997 | Nurse Practitioner<br>Shelby Plastic Surgery<br>Alabaster, AL |

- Evaluated and treatment of various skin conditions and complex wounds.
- Provided management and oversight of wound patients in hospital, nursing homes, and outpatient settings.
- Coordinated wound care rounds at a local nursing home.
- Provided case management of all home health and nursing home patients.

| | |
|---|---|
| 1995-<br>1996 | Nurse Practitioner<br>Visiting Nursing Association<br>Birmingham, AL |

- Provided medical/surgical nursing care for homebound patients.
- Provided primary care for patients living in assisted living facilities.
- Provided case management and quality assurance duties for high acuity patients.

3

06/13/07

| 1994-<br>1996 | Nurse Practitioner<br>Long Term Care Physician Services of AL, Inc.<br>Falkville, AL |
|---|---|

- Provided primary care for patients in nursing homes and assisted living facilities.
- Performed worker's comp evaluations for injured nursing home employees.
- Performed pre-employment physicals for potential employees
- Served as liaison between medical director and nursing homes for interdisciplinary conferences, quality assurance committees, etc.

| 1993-<br>1994 | Nurse Practitioner<br>Talladega Rural Health Clinic<br>Talladega, AL |
|---|---|

- Provided primary care for clinic patients, homebound patients, and patients living in assisted living facilities and nursing homes.
- Provided case management for high acuity patients.
- Served as liaison between medical director and nursing home for interdisciplinary conferences, quality assurance committees, etc.

| 1990-<br>1993 | Clinical Specialist/Nurse Practitioner<br>UAB<br>Department of Geriatrics<br>Birmingham, AL |
|---|---|

- Provided primary care to clinic patients.
- Provided case management of high acuity patents and served as liaison between physician and various home health agencies and nursing homes.
- Manager of research team.
- Coordinator of various pressure ulcer studies in nursing homes and home settings.

| 1988-<br>1990 | RN<br>BMC Montclair Hospital<br>Birmingham, AL |
|---|---|

- Flexi pool nurse in open heart intensive care, surgical intensive care, and neonatal intensive care.

| 1987-<br>1990 | RN<br>Home Health, Inc.<br>Birmingham, AL |
|---|---|

- Provided medical/surgical nursing care for homebound patients.
- Provided case management services for homebound patients.
- Served as home health consultant at area hospital

4                                    C6/13/07

1985-
1986

RN
UAB Hospital
Birmingham, AL
- Provided general surgical and OB/GYN nursing services.
- Served on quality assurance committee.
- Charge nurse while working on vascular surgery floor.

## TEACHING ACTIVITIES/PRESENTATIONS:

04/12/07

Efficient and Consistent Documentation
Sponsored by Jefferson County Ombudsman Program
Birmingham, AL

10/05/06

Detecting Fraudulent Charting and What to Do with It
Sponsored by ATLA Nursing Home Litigation Group
Memphis, TN

03/30/06

Together We Can Explore Senior Issues
Sponsored by Jefferson County Ombudsman Program
Birmingham, AL

09/29/05

Together We Can Improve Care through Successful Care Planning
Sponsored by Jefferson County Ombudsman Program
Birmingham, AL

09/26/05

CMS Cracks Down on Avoidable Pressure Ulcers
Sponsored by PESI
Las Vegas, NV

08/26/05

Medical Issues/Common Injuries
Sponsored by Lorman Education Services
Little Rock, AR

11/08/04

Setting Realistic Expectations (video)
Arkansas Advocates for Nursing Home Reform
Little Rock, AR

10/29/04

Understanding Nursing Home Medical Records
Sponsored by Arkansas ATLA
Fayetteville, AR

02/19/04

Advocates for Alabama Nursing Home Residents
Alabama Black Caucus-House of Representatives
Montgomery, AL

5

06/13/07

10/21/03    Investigating Elder Abuse: Strategies and Techniques
            Sponsored by National Citizens Coalition for NH Reform
            Washington, DC

10/02/03    Regional Nursing Home Negligence Seminar
            Sponsored by PESI
            Atlanta, GA

09/26/03    Understanding the Nursing Home Chart and Anticipating Defenses
            Sponsored by Arkansas ATLA
            Little Rock, AR

07/23/03    Tennessee Nursing Home Negligence
            Sponsored by PESI
            Knoxville, TN

01/30/03    Alabama Ombudsman Seminar
            Montgomery, AL

12/18/02    Alabama Nursing Home Negligence
            Sponsored by PESI
            Mobile, AL

12/17/02    Alabama Nursing Home Negligence
            Sponsored by PESI
            Birmingham, AL

02/01/02    Nursing Home Litigation: Defending Good Care
            Sponsored by Hall, Booth, Smith & Slover
            St. Simon Island, GA

01/11/02    Nursing Home Litigation: Defending Good Care
            Sponsored by Hall, Booth, Smith & Slover
            Tifton, GA

02/22/01    Arkansas House of Representatives
            Judiciary Committee
            Testified against proposed bill 1382-staffing changes in nursing homes.
            Little Rock, AR

03/16/00    Emerging Roles of Legal Nurse Consultants
            Sponsored by Memphis Case Management
            Memphis, TN

6

07/09/98          Home Continence Program
                  Visiting Nursing Association
                  Birmingham, AL

12/09/97          Skin Care for Home Health Aides
                  Huntsville Home Health
                  Huntsville, AL

11/18/97          Pressure Ulcers: Definitions and Management
                  Huntsville Home Health
                  Huntsville, AL

05/02/96          Gastrostomy Tube Insertion
                  Visiting Nursing Association
                  Birmingham, AL

10/94-            Preceptor
03/95             UAB Graduate Nurse Practitioner Student
                  Falkville, AL

01/94-            Preceptor
03/94             UAB Graduate Nurse Practitioner Student
                  Talladega, AL

02/93             Medicare Guidelines for Home Health Care
                  UAB Department of Geriatrics
                  Birmingham, AL

07/92             Wound Care Research in Long Term Care
                  Sponsored by Support Systems, International
                  Birmingham, AL

06/92-            Preceptor
08/92             UAB Medical Student and Undergraduate Biology Student
                  Birmingham, AL .

11/91             Wound Care Inservice
                  Jefferson County Nursing Home
                  Birmingham, AL

03/91             Wound Care Inservice
                  Jefferson County Nursing Home
                  Birmingham, AL

06/13/07

10/90        Wound Care Inservice
             Jefferson County Nursing Home
             Birmingham, AL

06/13/07

## O.C.G.A. § 9-11-9.2 AUTHORIZATION

COMES NOW, Alice Trammell, Executrix of the Estate of Mary Roberts, Plaintiff in the above-styled action, and, pursuant to O.C.G.A. § 9-11-9.2, files contemporaneously with the Complaint the following authorization:

I, Alice Trammell, Administrator of the Estate of Mary Roberts, Plaintiff, hereby authorize the attorney representing the defendant to obtain and disclose protected health information contained in medical records to facilitate the investigation, evaluation, and defense of the claims and allegations set forth in the Complaint which pertain to my deceased mother, Mary Roberts. This authorization includes said defense attorney's right to discuss the care and treatment of Mary Roberts with all of Mary Roberts treating physicians.

This authorization provides for the release of all protected health information except information that is considered privileged and authorizes the release of such information to said defense attorney by any physician or health care facility by which health care records of Mary Roberts are maintained.

I request that you notify my attorneys, Scott E. Gwartney, Brooks, LeBoeuf, Bennett, Foster & Gwartney, P.A., 909 East Park Avenue, Tallahassee, FL 32301, 850-222 2000 or Daniel W. Cotter, The Manning Leipo'd Building, 910 Church Street, Suite 100, Decatur, GA 30030, 404-377-5775, in the event you provide Mary Roberts' protected health information to anyone. I also request that you notify my attorneys of any request by defense counsel for you to meet with defense counsel to discuss Mary Roberts' protected health information and further request that my attorney be allowed to attend any such meeting. I also request that you maintain a log of any such disclosures. Mary Roberts enjoyed her health care patient relationship and trust that you will protect her protected health information, particularly in light of HIPAA.

EXHIBIT B

Defendant's attorney is not permitted to use this authorization, and you are not permitted to disclose this protected health information to defendant's attorney, unless defendant's attorney's request for my protected health information complies with 45 C.F.R. § 164.512(e).

### ENFORCEMENT OF HIPPA SECURITY AND PRIVACY RULES

Please be advised that I have signed this authorization in order to comply with O.C.G.A. § 9-11-9.2 but I DO NOT WAIVE any rights under the Health Insurance Portability and Accountability Act of 1996 (HIPPA) and its implementing regulations. A standard, requirement, or implementation specification adopted under Title 45, Subtitle A, Subchapter C of the Code of Federal Regulations that is contrary to a provision of State law preempts the provision of State law. See 45 C.F.R. § 160.203. You should seek the advice of an attorney for the purpose of determining (1) whether the authorization required by O.C.G.A. § 9-11-9.2 and provided herewith complies with 45 C.F.R. § 164.508, (2) whether any provision of HIPPA preempts O.C.G.A. § 9-11-9.2; and (3) whether the subject protected health information contains information that is considered privileged.

Please be further advised that pursuant to 45 C.F.R. § 164.528, I reserve the right to request an accounting of disclosures of this protected health information six (6) months following the date of this authorization. In the event of unauthorized disclosure of this protected health information, I reserve the right to file a Complaint with the Secretary of Health and Human Services pursuant to 45 C.F.R. § 164.512(e).

This authorization shall expire six (6) months from the date of its execution.

This 25th day of July, 2007.

_Alice Trammell_

Alice Trammell, Executrix of the Estate of
Mary Roberts

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused a copy of the foregoing **NOTICE OF REMOVAL** to be served upon all parties to this action by depositing a copy of same in the United States mail, postage prepaid, addressed as follows:

> Daniel W. Cotter, Esq.
> Law Offices of Daniel W. Cotter, P.C.
> The Manning Leipold Building
> Suite 100
> Decatur, Georgia 30030

> Scott E. Gwartney, Esq.
> Brooks, Leboeuf, Bennett, Foster, &
> Gwartney, P.A.
> 909 East Park Avenue
> Tallahassee, Florida 32301

This 12th day of September, 2007.

Jason E. Bring
Georgia Bar No. 023498

ARNALL GOLDEN GREGORY LLP
171 17th Street, NW
Suite 2100
Atlanta, Georgia 30363
(404) 873-8500
(404) 873-8501 (facsimile)

2216916v1